# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|                           |     |          |
|---------------------------|-----|----------|
| MARVEL THOMPSON,          | )   |          |
|                           | )   |          |
| v.                        | )   | 08 C 1294 |
|                           | )   |          |
| UNITED STATES OF AMERICA, | )   |          |
|                           | )   |          |

## MEMORANDUM OPINION AND ORDER

Marvel Thompson ("Thompson") moves pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the return of cash and property that the government seized from him during the execution of several search and arrest warrants in 2004. For the reasons explained below, Thompson's motion is granted in part and denied in part.

### I.

In May 2004, the government arrested Thompson and charged him and forty-six other defendants with a drug conspiracy. At the time of Thompson's arrest, the government seized $320,055.25 in United States currency from Thompson. Thompson and the other defendants were subsequently indicted. Thompson plead guilty without a plea agreement. The conspiracy lasted fifteen years, involving heroin, crack, cocaine and marijuana. Thompson for several years was the sole "king" or leader of the conspiracy, which involved the sale of drugs throughout Chicago. Leadership was later divided among three

defendants, Thompson being one of the three.  After a lengthy sentencing hearing, I sentenced Thompson to 540 months in the Bureau of Prisons.  I ordered him to pay a fine of $100,000.

A year after he was sentenced, on March 3, 2008, Thompson filed a motion under Fed. R. Crim P. 41(g), seeking return of the cash noted above.  Thompson also sought return of other property seized from him at the time of his arrest, including a 2001 Ford Excursion vehicle; parcels of real property; computer hardware and software, financial documentation, electronics equipment and photographs.

The government initially stated that it was prepared to release a portion of the money to Thompson -- $310,180.00 (plus interest) and the $1,100 seized from his person at the time of his arrest.  However, the government refused to return the two remaining amounts -- $5,363.00 and $3,412.25 -- on the ground that these had been forfeited to the FBI as a result of administrative proceedings.  The government stated that it could not return the Ford Excursion because it had handed the vehicle over to Ford Motor Credit, which had a lien against the vehicle.  Similarly, the government stated that it had released the parcels of real property seized from Thompson and thus could not return them.  Finally, the government stated that it wished to retain possession of the other items of property in light of the fact that Thompson had appealed from his sentence to the Seventh Circuit and the items still

possessed potential evidentiary value.

On August 15, 2008, the government sent a stipulated agreement to Thompson for the return of the $310,180.00 (plus $47,186.25 in interest).  Thompson refused to sign the stipulation, claiming that he was entitled to $322,975.00 (which included not only the $310,180.00, but also the other amounts that had been seized).  In addition, he claimed that he was entitled to $64,595.00 in interest.  Thompson further objected to the government's proposed stipulated agreement on the ground that it made no provision for the return of the other property he sought to recover.

Thompson conveyed these objections in a letter to the government dated August 25, 2008.  After receiving no answer, he sent a series of compromise proposals.  When the government eventually responded to Thompson's letters, it explained that it had learned during the intervening period that Thompson still owed roughly $98,500 of his $100,000 fine, and that he had an outstanding debt of $218,797.48 in unpaid taxes to the IRS, and that the IRS had filed a jeopardy assessment against his property. As a result, the government stated, Thompson was no longer entitled to the return of the money.

During the briefing and hearings related to Thompson's Rule 41 motion, I observed that the $300,000-plus in cash had not been disclosed as part of Thompson's assets in his Presentence Investigation Report ("PSR").  *See United States v. Thompson*, No.

04 CR 464-1, 2009 WL 235356 (N.D. Ill. Jan. 30, 2009).  Thompson
did not provide a financial affidavit at the time, and the
Probation Department, apparently without any input from the
government, put together an estimate from an earlier pretrial
services report.  At sentencing, the subject of funds taken from
Thompson was discussed, but it was never clear that the government
actually had in its possession over $300,000 that Thompson claimed
was his.  Thompson produced no evidence to refute the government's
evidence that the conspiracy made massive amounts of money over its
fifteen-year history.[1]  The parties offered conflicting
explanations for the government's failure to move for forfeiture of
the money at sentencing on the basis that the $300,000-plus in
cash, apparently all in small bills found at Thompson's residence,
constituted drug proceeds.  Thompson insists that he and the
government had entered into a verbal agreement according to which
he agreed to plead guilty in exchange for the government's
agreement not to seek forfeiture of the seized funds.  The
government denies having entered into any such agreement and
instead maintains that it simply "dropped the ball" in neglecting
to seek forfeiture of the cash.

Given that Thompson's appeal of his sentence was pending
before the Seventh Circuit at the time, I denied Thompson's Rule

---

[1] For a description of the conspiracy, see *United States v.
White*, 582 F.3d 787, 793-95 (7th Cir. 2009).

41(g) motion as premature. *Id.* at *3. On September 29, 2009, the Seventh Circuit affirmed Thompson's sentence, s*ee White*, 582 F.3d at 807, and on January 30, 2009, Thompson renewed his Rule 41(g) motion.

## II.

Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

"It is well settled that upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner." *United States v. David*, 131 F.3d 55, 59 (2d Cir. 1997) (quotation marks omitted)*; see also United States v. Pinson*, 88 Fed. App'x. 939, 940 (7th Cir. 2004) ("In general, seized property must be returned after criminal proceedings have terminated."). "However, the government may retain after trial seized property in which it has a 'continuing interest' -- that is, an interest beyond the property's use in the criminal proceedings." *David*, 131 F.3d at 59. Although there is no Seventh Circuit authority directly on point, other Courts of Appeals have uniformly held that where a government intends to use

-5-

seized funds to offset a criminal penalty owed by the owner, the government has a "continuing interest" in the funds. *Id.; see also United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990) ("In this case, the government had an interest in insuring that the monetary penalties imposed as part of the sentence were paid.") (citing *United States v. 608 Taylor Ave.*, 584 F.2d 1297, 1303 (3d Cir. 1978)).  It follows that the government here has a continuing interest in at least as much of the seized funds as is necessary to cover the outstanding amount of Thompson's fine.[2]

The government argues that, in light of Thompson's dispute with the IRS, it should be allowed to keep the remainder of the money until Thompson's tax debt is squared away.  With respect to these funds, however, matters are rather more complicated.  The government cites *United States v. Fitzen*, 80 F.3d 387 (9th Cir.

---

[2] In one of his filings, Thompson suggests that half of the fine be paid with the currency, and that he be allowed to continue paying the rest in installments.  This arrangement is not acceptable.  In imposing the fine, I made clear that payment was due immediately.  Thompson correctly observes that "immediate payment" does not mean "immediate payment in full," and that "a payment schedule established by the Bureau of Prisons per its Inmate Financial Responsibility Program 'does *not* conflict with [a] sentencing court's immediate payment order.'"  Reply Br. (Doc. 66) at 14-16 (quoting *United States v. Ellis*, 552 F.3d 737, 739-40 (7th Cir. 2008)).  The Seventh Circuit has explained, however, that "immediate payment" *does* mean "payment to the extent that the defendant can make it in good faith, beginning immediately." *Ellis*, 522 F.3d at 738 (quotation marks omitted); *see also McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999); *United States v. Jaroszenko*, 92 F.3d 486, 492 (7th Cir. 1996).  With more than $300,000 in cash, Thompson is able in good faith to pay the fine in full.

1996), for the proposition that federal and state tax levies are sufficient to defeat a Rule 41 motion for the return of property. In *Fitzen*, the defendant's property was confiscated pursuant to a search warrant executed by a joint federal and state task force. After being convicted on drug charges, Fitzen sought return of the property under Rule 41.  The government agreed to return all non-contraband property, with the exception of property that had been forfeited pursuant to state forfeiture law, and property that was subject to a state tax levy.  The Ninth Circuit acknowledged that, as a general matter, when property is no longer needed for evidentiary purposes, a defendant is presumptively entitled to its return.  Nevertheless, the court held that the rule did not apply to property subject to forfeiture or to a tax levy.  Furthermore, the court held that it was irrelevant to its decision that these were imposed pursuant to state law as opposed to federal law.  The salient fact, the court noted, was that the property did not belong to Fitzen.  As a result, the court upheld the district court's denial of the Rule 41 motion.  *See also  States v. Francis*, 646 F.2d 251, 263 (6th Cir. 1981) ("A defendant's motion for return of property will be unavailing where the government has a continuing interest in the property.  The courts have uniformly held that the Internal Revenue Service (IRS) may lawfully attach property belonging to a defendant even though the government's initial seizure of the property was illegal, and that the tax lien will

frustrate a motion for return of the property.") (citations omitted).

In rejoinder, Thompson cites the Seventh Circuit's decision *In re Search of 2847 East Higgins Road, Elk Grove Village, Ill.*, 390 F.3d 964 (7th Cir. 2004). There, the IRS seized money and property from a warehouse during the execution of a warrant. Wellek, the target of the search, later sought return of the property under Rule 41(g). He complained that by refusing to return his money, the government had prevented him from paying his tax debt. The district court denied Wellek's motion. On appeal, the decision was reversed. The court held that, although the IRS had filed a jeopardy levy against his property, the property nonetheless belonged to Wellek, and that in refusing him access to the money, the government could have caused him to incur additional penalties. Writing for the court, Judge Posner explained:

> [O]ur dismissing Wellek's challenge to the denial of his
> Rule 41(g) motion would increase his tax bill. Presumably
> as long as property is in the government's possession as
> evidence or fruits of the owner's alleged crime, the
> owner cannot use it to satisfy debts, even debts owed the
> government. If so, then interest and penalties on
> Wellek's unpaid taxes mounted up during the period in
> which the government was holding his $12 million as
> evidence or fruits of tax crimes that he was suspected of
> having committed.

*Id.* at 966.

Importantly, Judge Posner specifically distinguished Wellek's case from *Fitzen* and *Francis,* noting that the latter were cases "in

which the movant's ownership of the money was undetermined, as where the government had commenced forfeiture proceedings, or cases in which, so far as appeared, the movant had nothing to gain from proceeding under Rule 41(g) rather than contesting the levy." *Id.* at 967 (citations omitted). In Wellek's case, by contrast, Rule 41 might have given him the opportunity to contest the tax penalties. For example, if Wellek could prove that he had no other means of paying his tax debt, he might argue that the government's improper possession of his property prevented him from paying, which in turn would constitute reasonable cause for his failure to pay the taxes and might excuse him from having to pay additional interest. *Id.*

In granting Wellek's Rule 41 motion, however, Judge Posner went on to emphasize that the court's ruling did not mean that the funds in dispute were to be returned to Wellek's possession. Rather, since a jeopardy assessment and levy had been filed against Wellek's property, the court concluded that the money would remain in the government's hands. "What is involved in reversing the district court," Judge Posner explained, "is recharacterizing the government's possession of the money as being based on the jeopardy levy rather than the search warrant, a recharacterization that may benefit Wellek down the road but gives him no immediate right to raid the Treasury." *Id.* at 968.

Thompson's case is similar to Wellek's. Like Wellek, Thompson is involved in a tax dispute with the IRS and contends that the

government's refusal to return the seized funds has increased his tax bill; and, as in Wellek's case, it also appears that if Thompson prevails on his Rule 41 motion, he would have a potential basis for arguing that his penalties should be reduced. Thus, Thompson's motion is granted as to the funds remaining in the government's possession (after subtraction of an amount necessary to pay what is left of Thompson's $100,000 fine). While the money may be deemed Thompson's for purposes of his dispute with the IRS, however, it will remain in the government's possession until the IRS tax dispute is resolved.

In addition to the seized cash, Thompson seeks the return of real property and other items of personal property, including computer equipment, photographs, and personal documents. As noted above, the government is no longer in possession of some of these items. Since the government is not obliged to return property that is not in it possession, *see, e.g.*, *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("Rule 41(g) permits only the recovery of property in the possession of the Government. Therefore, if the Government no longer possesses the property at issue, no relief is available under Rule 41(g)."), Thompson's motion is denied as to these items.

However, the government originally retained possession of other items as potential evidence during the pendency of Thompson's appeal. Now that the appeal has been decided, the government

presumably no longer has any need for these items. (The government has not indicated any reason for keeping the property). As to these, Thompson's motion is granted.

Thompson's financial documents are a separate matter. In its most recent filing, the government states that it is still in possession of the documents but that it will return them once the IRS has had an opportunity to inspect them for purposes of its tax dispute with Thompson. These documents shall be returned to Thompson as soon as is practicable.

In sum, Thompson's Rule 41(g) motion is granted in part and denied in part. With respect to the seized funds, an amount necessary to pay what remains of his fine is to be deducted; the government will retain possession of the remaining money; however, the funds may be considered as belonging to Thompson as of March 4, 2008[3] insofar as this is material to his tax dispute with the IRS.

---

[3] Thompson asks that the money be deemed his as of the date on which the government deposited the funds in an account after determining that the funds possessed no evidentiary value. Reply Br. (Doc. 66) at 14. In the alternative, he argues that the funds should be returned to him as of March 29, 2005, the date on which he pleaded guilty. *Id.* Finally, he maintains that at "the very latest, [his] money should have been returned to him in August of 2008 when the government acknowledged in writing that [he] was entitled to the return of that money." *Id.* at 15. In *In re Search of 2847 East Higgins Road*, however, the court stated that its ruling "would have the effect of revesting Wellek with his property as of the date that the motion should have been granted." 390 F.3d at 966. Here, Thompson filed his initial Rule 41(g) motion on March 4, 2008. Since that is the earliest possible date on which his motion could have been granted, the money remaining after his fine has been paid in full will be deemed his as of that date.

## IV.  Conclusion

For the reasons discussed above, Thompson's motion for return of property is granted in part and denied in part.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 25, 2010